Filed 8/27/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SHEET METAL WORKERS' INTERNATIONAL ASSOCIATION, LOCAL 104,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOHN C. DUNCAN, as Director, etc., et al.,<br><br>    Defendants and Respondents;<br><br>RUSS WILL MECHANICAL, INC.,<br><br>    Real Party in Interest and Appellant. | A131489<br><br>(City & County of San Francisco Super. Ct. No. 510528) |

California's prevailing wage law generally requires that workers employed on public works be paid the local prevailing wage for work of a similar character. (Lab. Code,[1] § 1771.)  The question presented by this appeal is whether the prevailing wage law applies to an employee of a subcontractor who fabricates materials for a public works project at a permanent, offsite manufacturing facility that is not exclusively dedicated to the project.  We conclude that California law does not require the prevailing wage to be paid to the employee in this circumstance.

**FACTUAL AND PROCEDURAL BACKGROUND**

In 2005, a contractor entered into a public works contract with a community college district to modernize an administration building at a community college in Santa

---

[1]All further statutory references are to the Labor Code unless otherwise specified.

Clara County (the project). Real party in interest and appellant Russ Will Mechanical, Inc. (Russ Will) was the subcontractor for the heating, ventilation, and air conditioning (HVAC) component of the project. The subcontract provided that the project was to be built according to the specifications of the prime contract between the contractor and the community college district. Russ Will was required to "furnish all labor, materials, equipment, services and supplies necessary to complete" the HVAC work. The subcontract did not specify whether Russ Will was required to fabricate any material necessary to complete the HVAC work. A lengthy document that was part of the prime contract specified minimum requirements for all trades on the project. The requirements were not specific to Russ Will or any other particular subcontractor. Among other things, the general project requirements specified that ductwork was to be fabricated according to industry HVAC construction standards. The general requirements that formed part of the prime contract did not specify who was required to fabricate HVAC materials. The subcontract provided that the project was subject to prevailing wage requirements and required Russ Will to "pay not less than the [applicable prevailing wage] to all laborers, workmen, and mechanics employed by him at the project site in the execution of work hereunder."

Since 1991, Russ Will has fabricated materials at a permanent, offsite facility it operates in Hayward. The offsite facility was not established for the project at issue here but instead has been utilized to manufacture items for various private and public projects. Russ Will does not sell the materials it fabricates to the general public.

Steve Neves, an employee of Russ Will, filed a complaint with the Department of Industrial Relations, Division of Labor Standards Enforcement (DLSE) alleging he should have been paid prevailing wages for work related to the project. The work that Neves performed involved the fabrication of sheet metal at Russ Will's Hayward facility in accordance with the plans and specifications set forth in the contract documents for the project. Neves fabricated various ducts, flashing, square rounds, and fittings for use in the project. There is no indication in the record that Neves ever worked at the site of the project in Santa Clara County. According to Russ Will, at least some of the fabricated

sheet metal items could have been ordered from standard industry catalogs. Other required sheet metal items for the project were considered custom because of the non-standard dimensions. Russ Will contemplated ordering custom sheet metal items from a third party, which in turn was going to order them from a manufacturer. After learning that the price for the custom items would be high, Russ Will ended up fabricating the custom items in its own permanent facility in Hayward.

DLSE issued a civil wage and penalty assessment against Russ Will for failing to pay prevailing wages for the fabrication work performed in its Hayward facility. Russ Will requested a review of the assessment pursuant to section 1742, subdivision (a). At the invitation of DLSE, plaintiff and respondent Sheet Metal Workers' International Association, Local 104 (Local 104) expressed an interest in participating in the proceedings and submitted a position statement in support of DLSE's assessment.

The Department of Industrial Relations (department) issued a coverage determination in which it concluded that Russ Will was required to pay prevailing wages for the offsite fabrication work associated with the project. The department's determination turned on whether Russ Will was exempt from the prevailing wage law as a material supplier. To qualify for the material supplier exemption, the employer must sell supplies to the general public and its fabrication or manufacturing facility must not be established for the particular public works contract or be located at the site of the public work. (See *O.G. Sansone Co. v. Department of Transportation* (1976) 55 Cal.App.3d 434, 442 (*Sansone*).) Because Russ Will does not sell supplies to the general public, the department concluded that Russ Will was properly characterized as a subcontractor under section 1722 and was not exempt from the prevailing wage law as a material supplier. Russ Will filed an administrative appeal.

In its decision on administrative appeal, the department reversed its initial coverage determination and concluded that the offsite fabrication performed by Russ Will was not subject to the prevailing wage law. Although the department again concluded that Russ Will was a subcontractor within the meaning of the prevailing wage law and did not qualify for the material supplier exemption, the department explained that this

3

conclusion did not necessarily resolve the question of whether the offsite fabrication was subject to prevailing wage requirements. The department noted that California case law did not specifically address the issue posed by this case—i.e., whether fabrication is subject to prevailing wage requirements when performed in an offsite facility of a subcontractor that does not sell supplies to the general public. In the absence of directly applicable California case law, the department interpreted the prevailing wage law consistent with federal regulations specifying that prevailing wages do not apply to work performed at a permanent fabrication plant when the location and existence of the plant are determined wholly without regard to any particular public works project. Because the project at issue here had no bearing on the location or existence of Russ Will's offsite fabrication facility, the department concluded that fabrication work performed at the offsite facility was not subject to the prevailing wage law.

Local 104 filed a petition for a writ of mandate in the superior court against the department and its director challenging the department's coverage decision.[2] In its petition, Local 104 alleged that, unlike a material supplier that is exempt from the prevailing wage law, the employees at Russ Will's offsite facility fabricated customized sheet metal items in accordance with the specifications in the project's contract documents. According to Local 104, because the custom fabrication was an integral part of the project and was performed in the execution of a public works contract, the work should have been covered by the prevailing wage law.

The superior court granted the petition and directed the issuance of a writ of mandate. The court reasoned that the department "applied an incorrect legal standard by relying exclusively on federal law." According to the court, the correct legal standard for analyzing whether offsite work is covered by California's prevailing wage law is set forth in *Williams v. SnSands Corp.* (2007) 156 Cal.App.4th 742 (*Williams*). The court

_____

[2]We refer to the department and its director collectively as the department, unless the context requires further specificity.

4

remanded the matter to the department for reconsideration utilizing the legal standard set forth in *Williams*.

Following entry of judgment, Russ Will filed a timely notice of appeal. Although the department participated in the proceedings before the superior court, it did not participate in this appeal or file any briefs in this court.

## DISCUSSION

### 1. *Standard of Review*

The department's coverage determination constitutes a quasi-legislative act that is subject to review by traditional mandate under Code of Civil Procedure section 1085. (*Reclamation Dist. No. 684 v. Department of Industrial Relations* (2005) 125 Cal.App.4th 1000, 1004; *McIntosh v. Aubry* (1993) 14 Cal.App.4th 1576, 1583–1584.) Ordinarily, our review of an administrative agency's quasi-legislative act is "limited to the question of whether the agency's action was arbitrary, capricious, or entirely lacking in evidentiary support." (*Reclamation Dist. No. 684 v. Department of Industrial Relations, supra,* at p. 1004.) Here, however, the issue on appeal turns on the interpretation of the relevant statutes governing the application of the prevailing wage law. The parties to this appeal agree that the relevant facts are undisputed and that the issue on appeal presents a pure question of law. Under these circumstances, we exercise independent judgment in resolving the purely legal question of whether prevailing wages are required to be paid for work performed by employees at Russ Will's permanent, offsite facility. (See *City of Long Beach v. Department of Industrial Relations* (2004) 34 Cal.4th 942, 949 (*City of Long Beach*); accord, *McIntosh v. Aubry, supra,* at pp. 1583–1584.)

As a general matter, evidence outside the record before the administrative agency is inadmissible in traditional mandate actions challenging quasi-legislative administrative decisions on the ground the agency did not proceed in the manner required by law. (See *Western States Petroleum Assn. v. Superior Court* (1995) 9 Cal.4th 559, 576.)

5

Consequently, our review is confined to facts established in the administrative record of the proceedings before the department.[3]

2.     *Statutory Framework Relevant to Offsite Application of Prevailing Wage Law*

The issue raised on appeal requires us to consider whether and under what circumstances the prevailing wage law extends to work performed away from the site of a public works project.  Our starting point is the language of the relevant statutes.

"The primary goal in construing a statute is to ascertain legislative intent so as to effectuate the purpose of the law.  [Citations.]  To do so, we first examine the language of the statute, giving the words their ordinary, commonsense meaning and according significance to all words used, if possible."  (*Friends of Lagoon Valley v. City of Vacaville* (2007) 154 Cal.App.4th 807, 825; accord, *Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386.)  A specific statutory provision should be construed with reference to the entire statutory scheme in order to harmonize the various elements.  (Cf. *Bowland v. Municipal Court* (1976) 18 Cal.3d 479, 489.)  This principle is particularly apt in the context of the prevailing wage law, portions of which have been described as "hardly a triumph of the drafter's art."  (*State Building & Construction Trades Council of California v. Duncan* (2008) 162 Cal.App.4th 289, 308.)

---

[3]Local 104 seeks judicial notice of 17 items that it claims are relevant to the issues raised on appeal.  We grant the request as to administrative decisions of the department and the agency charged with enforcing prevailing wage laws in the State of Washington. (Evid. Code, § 452, subd. (c).)  We otherwise deny Local 104's request for judicial notice because the remaining documents were not part of the record before the department.  To the extent that Local 104 seeks to supplement the factual record considered by the department, the documents are inappropriate for judicial notice on appeal.  In any event, the documents are not relevant to our analysis.  (See *Mangini v. R.J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063 [matters subject to judicial notice must be relevant to issues raised on appeal], overruled on another ground in *In re Tobacco Cases II* (2007) 41 Cal.4th 1257, 1276.)  For example, Local 104 requests judicial notice of an online edition of a career guide issued by the United States Department of Labor for the purpose of demonstrating that a federal agency considers fabrication to be encompassed within the definition of construction.  We do not dispute that construction activities may include fabrication.

California's prevailing wage law (§ 1720 et seq.) was originally enacted as an uncodified measure in 1931, at roughly the same time as the enactment of its federal counterpart, the Davis-Bacon Act (40 U.S.C. §§ 3141–3148). (*Azusa Land Partners v. Department of Industrial Relations* (2010) 191 Cal.App.4th 1, 14; see Stats. 1931, ch. 397, p. 910.) The Legislature codified the prevailing wage law in 1937 at the time it created the Labor Code. (Stats. 1937, ch. 90, pp. 185, 243–244.)

The purpose of the prevailing wage law is "to protect and benefit employees on public works projects." (*Lusardi Construction Co. v. Aubry* (1992) 1 Cal.4th 976, 985.) "This general objective subsumes within it a number of specific goals: to protect employees from substandard wages that might be paid if contractors could recruit labor from distant cheap-labor areas; to permit union contractors to compete with nonunion contractors; to benefit the public through the superior efficiency of well-paid employees; and to compensate nonpublic employees with higher wages for the absence of job security and employment benefits enjoyed by public employees." (*Id.* at p. 987.) The law is to be liberally construed, although courts are not empowered to " 'interfere where the Legislature has demonstrated the ability to make its intent clear and has chosen not to act.' " (*City of Long Beach, supra,* 34 Cal.4th at p. 950.)

Section 1771 sets forth the general rule that, with certain exceptions, prevailing wages "shall be paid to all workers employed on public works." Section 1774 further provides that "[t]he contractor to whom the [public works] contract is awarded, and any subcontractor under him, shall pay not less than the specified prevailing rates of wages to all workmen *employed in the execution of the contract*." (Italics added.) Similar to section 1774, section 1772 likewise defines its scope with reference to workers employed "in the execution of" a public works contract: "Workers employed by contractors or subcontractors *in the execution of any contract for public work* are deemed to be employed upon public work." (Italics added.)

The term "public works" is defined in section 1720. As relevant here, subdivision (a)(1) of section 1720 defines "public works" to include, among other things, "[c]onstruction, alteration, demolition, installation, or repair work done under contract

and paid for in whole or in part out of public funds . . . ." As used in the statute, " 'construction' includes work performed during the design and preconstruction phases of construction, including, but not limited to, inspection and land surveying work." (§ 1720, subd. (a)(1).)

Local 104 claims the reach of the prevailing wage law is broad and without geographical limitation because of language in sections 1772 and 1774 extending the law's scope to all those employed "in the execution" of a public works contract. The phrase "in the execution of" is susceptible to an expansive interpretation. For example, in *Williams, supra,* 156 Cal.App.4th at page 750, the court concluded the phrase "in the execution of any contract for public work" as used in section 1772 "plainly means the carrying out and completion of all provisions of the contract."[4] In addition, Local 104 focuses on the fact that section 1720, subdivision (a)(1) defines the term "construction" broadly to include pre-construction activities, urging that the term is commonly understood to include the pre-construction activity of fabricating sheet metal for HVAC systems.

For its part, Russ Will contends that Local 104's legal position is based on an unsupported and overly expansive interpretation of the phrase "in the execution of" in sections 1772 and 1774. We tend to agree. Under an expansive interpretation of the phrase "in the execution of" as used in sections 1772 and 1774, nearly any activity related to the completion or fulfillment of a public works contract would be subject to the prevailing wage law, regardless of where it takes place or whether it plays a substantial role in the process of construction. We do not suggest that Local 104 urges such a broad interpretation, but the fact remains that focusing exclusively on the "in the execution of"

---

[4]The *Williams* court went on to set forth factors to consider in assessing coverage under the prevailing wage law and specifically noted that an activity is not necessarily subject to the prevailing wage law simply because a term in a contract requires a subcontractor or contractor to carry out that activity to fulfill the contract. (*Williams, supra,* 156 Cal.App.4th at pp. 752, 754 & fn. 4.)

8

language in sections 1772 and 1774 would lead to a potentially overbroad application of the prevailing wage law without some limiting guidelines.

Russ Will argues that the limiting principle is found in statutory language specifying that prevailing wages apply to workers "employed *on* public works." (§ 1771, italics added.) Russ Will interprets the reference to being employed "on" public works in various sections of the prevailing wage law to mean that employees must be physically present on the site of the public works project to qualify for prevailing wages. (E.g., § 1770, § 1722.1, § 1775, subd. (b)(1) & (b)(3), § 1776, subd. (a)(2), § 1781, subd. (c)(2)(A), § 1811.) We are not persuaded that references to being employed "on public works" necessarily connotes a geographical limitation. The reference to being employed "on public works" could just as easily be interpreted to mean working on an activity called for in a public works contract, regardless of whether that activity takes place at the site of the public works project. The language is ambiguous.

Further, the language of California's prevailing wage law differs from the language of the federal Davis-Bacon Act, which plainly imposes a geographical limitation on the application of the federal prevailing wage law. The Davis-Bacon Act applies to "mechanics and laborers employed *directly on the site of the work . . . .*" (40 U.S.C. § 3142(c)(1), italics added.) This coverage language has been held to connote a limitation to the geographical confines of the federal project's jobsite. (*Building & Constr. Trades Dept. v. Dept. of Labor* (D.C. Cir. 1991) 932 F.2d 985, 986, 990.)

Local 104 claims it is significant that the California Legislature chose not to adopt the Davis-Bacon Act's "directly on the site" coverage language. It relies on the principle that "[t]he omission of a provision contained in a foreign statute providing the model for action by the Legislature is a strong indication that the Legislature did not intend to import such provision into the state statute." (*J.R. Norton Co. v. General Teamsters, Warehousemen & Helpers Union* (1989) 208 Cal.App.3d 430, 442.) As support for its view, Local 104 cites a litany of out-of-state cases in which courts have concluded that a state prevailing wage law that omits the words "directly" or "at the site of the work" should be interpreted more broadly than the Davis-Bacon Act. (See *Sharifi v. Young*

9

*Brothers, Inc.* (Tx. Ct. App. 1992) 835 S.W.2d 221, 223; *Everett Concrete Products, Inc. v. Department of Labor & Industry* (Wash. 1988) 748 P.2d 1112, 1115–1116; *Long v. Interstate Ready-Mix* (Mo. App. 2002) 83 S.W.3d 571, 578.)

While we agree that some significance should be attached to the fact that the prevailing wage law does not use the "directly on the site" language employed in the Davis-Bacon Act, we are not convinced it is appropriate to draw the inference that the Legislature specifically rejected a geographical limitation on the application of the prevailing wage law. Among other things, it is not clear that the Davis-Bacon Act served as the model for the prevailing wage law as originally enacted. The two statutory schemes were passed at roughly the same time in 1931.[5] (*Azusa Land Partners v. Department of Industrial Relations, supra,* 191 Cal.App.4th at p. 14.) Further, even if the Davis-Bacon Act did serve as a model for California's law, the federal law as originally enacted in 1931 did not contain the "directly on the site" geographical limitation that now appears in the statute. (Davis-Bacon Act, Act of March 3, 1931, Pub. L. No. 798, ch. 411, 46 Stats. 1494.) Instead, the statute referred to "laborers and mechanics employed by the contractor or any subcontractor on the public buildings covered by the contract . . . ." (*Id.*, § 1.) The "site of the work" phraseology first appeared in the Davis-Bacon Act in 1935. (*Ball, Ball & Brosamer v. Reich* (D.C. Cir. 1994) 24 F.3d 1447, 1453, fn. 3.) Consequently, the circumstances surrounding the Legislature's adoption of the prevailing wage law do not support an inference that the Legislature specifically rejected language imposing a geographical limitation on the law's application.

Moreover, Local 104's contention that the prevailing wage law contains no geographical restriction is belied by references in various statutes to the jobsite or the site of the public work. For example, section 1773.2 requires a public agency to post the

_____

[5]The prevailing wage law was first passed as an uncodified measure in 1931 and was approved by the Governor on May 25, 1931. (Stats. 1931, ch. 397, p. 910.) At the time of its enactment, the law contained the "in the execution of" language that remains in sections 1772 and 1774 today. (Stats. 1931, ch. 397, § 1, p. 910.) The Davis-Bacon Act was approved just a few months earlier, on March 3, 1931. (Davis-Bacon Act, Act of March 3, 1931, Pub. L. No. 798, ch. 411, 46 Stats. 1494.)

applicable per diem prevailing wages "at each job site." It would make little sense to require the public agency to post notices at offsite locations that may be distant from the site of the public work and that are under the control of a contractor or subcontractor. Indeed, in many cases—including this one—the public agency may not even be aware that fabrication work is being performed at permanent, offsite locations. Thus, a reasonable reading of this statute suggests that the "jobsite" is the site of the public works project and not any site, wherever located, at which a worker is employed in the execution of some aspect of the public works contract. Section 1777.5 contains even more direct references to the site of the work. That section addresses a contractor's obligation to utilize apprentices on public works and makes repeated references to the site of the public work. (See § 1777.5, subds. (e), (f), (m)(1).)

Although the Legislature saw fit to use terms of geographical limitation in selected provisions of the prevailing wage law, these limited examples do not compel a conclusion that the Legislature intended the prevailing wage law to be restricted to workers employed at the site of the public work. On the other hand, for reasons we have explained, we do not agree with Local 104 that we are obliged to conclude that the Legislature necessarily rejected any geographical limitation on the application of the prevailing wage law. We are left to conclude that the Legislature's intent concerning geographical limitations on the application of the prevailing wage law is ambiguous. In order to resolve the ambiguity we have identified, we next turn to the California case law that bears upon the offsite application of the prevailing wage law.

3.      *California Case Law Addressing Offsite Work—Sansone and Williams*

Our analysis is guided by two published California decisions that address whether an employee is entitled to prevailing wages for work performed away from the site of the public work—*Sansone, supra,* 55 Cal.App.3d 434, and *Williams, supra,* 156 Cal.App.4th 742. As Russ Will points out, these are "hauling" cases, which means they involve drivers that haul materials to or from the site of a public works project. They do not involve the manufacture or fabrication of materials at a permanent offsite facility.

11

In *Sansone,* the court addressed whether drivers who hauled materials onto a public works site should be treated as subcontractors and therefore subject to the prevailing wage law. (*Sansone, supra,* 55 Cal.App.3d at p. 441.) In determining that the drivers were entitled to prevailing wages, the court was guided by the reasoning applied in the context of the Davis-Bacon Act by the Court of Claims in *H.B. Zachry Company v. United States* (Ct. Cl. 1965) 344 F.2d 352 (*Zachry*). (*Sansone, supra,* at p. 442.) The court in *Zachry* noted that bona fide material suppliers (also referred to as "materialmen") that sell building materials to a contractor engaged in a public works project had long been excluded from coverage under the Davis-Bacon Act. (*Zachry, supra,* at p. 359.) To qualify for this material supplier exemption, the material suppliers had to be selling supplies to the general public, the plant could not be established specially for the particular public works contract, and the plant could not be located at the project site. (*Ibid.*) The *Zachry* court concluded that a trucker's employees that delivered building materials to a project site were not covered by the Davis-Bacon Act because the function the trucking company performed—the delivery of standard materials—was a "function which is performed independently of the contract construction activities." (*Id.* at p. 361.) The court reasoned that its decision was a "logical extension" of the congressional intent to exclude material suppliers from coverage under the Davis-Bacon Act. (*Ibid.*)

In contrast to the facts in *Zachry,* the delivery drivers in *Sansone* hauled construction materials—aggregate subbase for a highway—from a dedicated location adjacent to and established exclusively to serve the project site. (*Sansone, supra,* 156 Cal.App.4th at p. 443.) The contract required the drivers who delivered the aggregate subbase to spread and compact the materials at the project site. (*Ibid.*) The *Sansone* court analogized the situation to the facts in a Wisconsin case in which the delivery of materials that were distributed over a roadway under construction was deemed to be an " 'integrated aspect of the "flow" process of construction.' " (*Id.* at p. 444.) The court concluded that the drivers were not material suppliers or employees of material suppliers but instead performed "an integral part" of the contractor's obligation under the public works contract. (*Id.* at p. 445.)

12

Whereas *Sansone* concerned "on-hauling" materials onto the site of public works project, the other relevant California case, *Williams, supra,* 156 Cal.App.4th at page 749, specifically addressed removing or "off-haul[ing]" construction materials from a site. The *Williams* court focused on the meaning of the "in the execution of" language in section 1772 and primarily relied upon the analysis in *Sansone* and the cases relied upon by that decision. (*Id*. at pp. 749–752.) The court noted that the critical factor in the analysis was whether a trucking company was "conducting an operation truly independent of the performance of the general contract for public work, as opposed to conducting work that was integral to the performance of that general contract." (*Id.* at p. 752.) The *Williams* court held that the off-haul work at issue in that case was not covered by the prevailing wage law, reasoning that it was not integrated into the flow process of construction. (*Id.* at p. 754.) Among other things, the court emphasized that the trucking company off-hauled "generic materials to a locale bearing no relation to the public works project site" (*id.* at p. 753) and that the prime contract did not require the contractor to off-haul general building materials from the site (*id.* at p. 754). According to the court, the off-hauling of generic materials was no more an integral part of the construction process than the delivery of generic materials by a bona fide material supplier. (*Id.* at p. 753.)

There is substantial disagreement concerning the role that *Sansone* and *Williams* should play in our analysis. Russ Will dismisses them as "hauling cases" that are limited to their facts. Similarly, although the department considered *Sansone* and *Williams* in reaching its decision, it noted that the decisions did not address the specific issue posed by this case. By contrast, the superior court concluded that the proper legal standard for analyzing this dispute is set forth in *Williams*, and Local 104 contends that any attempt to discount *Sansone* or *Williams* simply as hauling cases is myopic.

*Sansone* and *Williams* are relevant to our analysis to the extent they set forth a general framework for considering whether certain functions are integral to the performance of a public works contract. Of particular importance to the issue posed here is whether an operation is truly independent of the contract construction activities—i.e.,

13

whether it is integrated into the flow process of construction. (See *Sansone, supra,* 55 Cal.App.4th at pp. 444–445; *Williams, supra,* 156 Cal.App.4th at p. 751.)

The specific factors considered by the courts in *Sansone* and *Williams* are less helpful to our analysis. In *Sansone,* the court's decision turned on factors specific to the delivery of materials onto a jobsite. (See *Williams, supra,* 156 Cal.App.4th at p. 752 [setting forth factors considered in *Sansone,* including whether hauled materials were immediately distributed onto the jobsite].) Although the court in *Williams* cited the factors relied upon by *Sansone,* it determined that the "off hauling" question had to be considered anew. (*Williams, supra,* at p. 752.) The court set forth the following three factors to be considered in assessing off-hauling activities: "whether the transport was required to carry out a term of the public works contract; whether the work was performed on the project site or another site integrally connected to the project site; whether the work that was performed off the actual construction site was nevertheless necessary to accomplish or fulfill the contract." (*Ibid.*)

The three factors cited by the *Williams* court have a more general application than the ones relied upon by the *Sansone* court. Nevertheless, the factors arose and were applied in the context of off-hauling and necessarily were tailored to that activity. Hauling and fabrication are distinct activities that give rise to different concerns in the context of the prevailing wage law. Among other things, hauling activities necessarily have at least a limited geographical connection to the public works site. By contrast, offsite fabrication could theoretically take place anywhere in the world. Further, fabrication could take place in a permanent, offsite facility that has an existence and operation wholly independent of the public works project, or it could take place in a facility specifically designed for the project. These facts bear upon whether a particular operation forms an integral part of the flow of the construction process. The factors cited in *Williams* do not necessarily address issues unique to offsite fabrication.

Moreover, Local 104's application of the factors in *Williams* demonstrates their limitations in the context of offsite fabrication. Local 104 seems to ignore the first two factors—which presumably are not satisfied under the facts of this case—and instead

14

focuses almost exclusively on the third—whether offsite work was "necessary to accomplish or fulfill the contract." (*Williams, supra,* 156 Cal.App.4th at p. 752.) Considered alone, this factor provides little or no more guidance than the language of section 1772, which provides that workers employed "in the execution" of a public works contract are considered to be employed upon public work. A task that could be considered necessary to fulfill a contract might nonetheless have little relation to the flow of the construction process.

While we conclude that *Sansone* and *Williams* contain useful general guidelines for considering whether offsite work is covered under the prevailing wage law, the specific concerns addressed in those cases are not dispositive of the issue raised here.

4.       *The Department's Longstanding Approach to the Issue of Offsite Fabrication*

Although the ultimate responsibility for the construction of a statute rests with the court, we accord great weight and respect to the construction of the statute by the agency charged with administering the statute. (*Sharon S. v. Superior Court* (2003) 31 Cal.4th 417, 436; *Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 12.) Deference to an administrative agency's interpretation is situational and depends on a complex of factors. (*Yamaha Corp. of America v. State Bd. of Equalization, supra,* at p. 12.) An agency's interpretation is entitled to greater weight when "the agency has special expertise and its decision is carefully considered by senior agency officials . . . ." (*Sharon S. v. Superior Court, supra,* at p. 436.)

An agency's interpretation is also given greater credit when it is consistent and longstanding, whereas a vacillating position is not entitled to deference by the courts. (*Yamaha Corp. of America v. State Bd. of Equalization, supra,* 19 Cal.4th at p. 13.) A longstanding and consistent interpretation should generally not be disturbed unless it is clearly erroneous. (*Id.* at p. 21 (conc. opn. of Mosk, J.).) Because the Legislature is presumed to be aware of a longstanding administrative practice, the failure to substantially modify a statutory scheme is a strong indication that the administrative practice is consistent with the Legislature's intent. (*Id.* at p. 22)

The department's interpretation of the law as it relates to offsite fabrication arises in the context of coverage determinations under the prevailing wage law. Although the department has determined that its coverage determinations do not have precedential value, the determinations nonetheless constitute administrative interpretations entitled to considerable deference. As the superior court recognized, the department has special expertise in administering the prevailing wage law. Coverage determinations typically result from adversarial proceedings, and the determinations—which are issued by the director of the department—are plainly the product of careful consideration by senior members of the administrative agency.

As early as 1984, the department determined that offsite fabrication work performed at a permanent facility was not subject to prevailing wage requirements. In a coverage determination issued in *Russell Mechanical, Inc.* (Sept. 17, 1984), the department concluded that the offsite fabrication of a custom fume recovery hood for a nuclear power plant by a supplier of sheet metal products was not subject to prevailing wage requirements. [6] The department reasoned that offsite fabricators are more like material suppliers than onsite construction workers. The department noted that extending coverage to offsite fabrication would not significantly protect local labor markets, because fabrication does not necessarily take place in the local labor market. The department also reasoned that, because offsite fabrication facilities could be located anywhere in the country, expanding the law to offsite fabrication would frustrate the

_____

[6]All further references to coverage determinations and public works cases are to decisions of the department. Although the administrative record contains a copy of the *Russell Mechanical* determination (dated September 17, 1984) as well as the department's opinion on reconsideration in that case (dated September 11, 1985), the materials provided to this court do not include any documentation containing an administrative case number for the coverage determination. None of the parties that cited that coverage determination—including the department in its decision on administrative appeal—referred to a case number associated with *Russell Mechanical*. Because there appears to be no dispute that the *Russell Mechanical* coverage determination contained in the administrative record is an authentic record of action taken by the department, we cite to the determination despite the absence of an administrative case number.

law's administration and adversely affect enforcement by greatly expanding the reach of the prevailing wage law. The department concluded it was "highly unlikely that the Legislature could have intended such an application of jurisdiction without expressly so stating." In an opinion on reconsideration affirming its determination, the department discounted the argument that the fume hood was a custom product made to the specifications of the contract, pointing out that it could have been made anywhere in the world and shipped to the nuclear power plant. The department also applied the analysis in *Sansone, supra,* 55 Cal.App.3d 434, and concluded that the sheet metal supplier was exempt from the prevailing wage requirements as a material supplier because it was a standard supplier of sheet metal products to the general public, its facility existed long before the public works contract, and the facility was not located on or near the site of the public work.

More recently, in 2008, the department determined that the prevailing wage law did not apply to modular units to be installed at a school site, because the units were fabricated at a permanent, offsite facility that was not integrally connected to the project site. (Pub. Works Case No. 2007–009 (May 5, 2008), *Wasco Union High School District.*) Likewise, in another 2008 decision, the department determined that the prevailing wage law did not apply to the fabrication of construction materials at a permanent, offsite facility. (Pub. Works Case No. 2008–008 (May 28, 2008), *Sunset Garden Apartments.*) In both cases, the offsite facility also sold supplies to other contractors.

The department has reached a different conclusion in cases in which offsite fabrication takes place in a temporary facility established specifically for the public works project instead of at a permanent offsite facility. Thus, in Public Works Case No. 1992–036 (Apr. 5, 1994), *Imperial Prison II, South,* the department determined that prevailing wage requirements applied to the offsite fabrication of concrete panels at a yard established exclusively for the public works project. The department reasoned that, consistent with *Sansone,* its "past coverage determinations have consistently held that the off-site fabrication of materials at a site whose sole purpose is the fabrication of those

17

materials for a public works site, is a public works itself." The department reached a similar conclusion in Public Works Case No. 99–032 (June 23, 2000), *San Diego City Schools, Construction of Portable Classrooms.* There, again in reliance on *Sansone,* the department concluded that the offsite construction of portable classrooms was subject to prevailing wage requirements where the work was performed at a facility set up solely to service the public works project.

These coverage determinations as well as others cited by the parties to this appeal establish that the department has followed a consistent and longstanding practice with regard to offsite fabrication. The department has determined that fabrication work performed at a permanent, offsite facility not exclusively dedicated to the public works project is not covered by the prevailing wage law, whereas fabrication work performed at a temporary facility that is dedicated to the project is covered. Local 104 argues that the department's prior decisions on offsite fabrication turn on an application of the three-part material supplier exemption and do not address the specific issue here—i.e., whether an employee that fabricates materials at a permanent offsite facility is covered by the prevailing wage law when the employer does not sell supplies to the general public and therefore does not satisfy one of the criteria to qualify for the material supplier exemption. We agree that the prior determinations of the department do not address this specific issue or involve a fact pattern identical to the one presented here. Nonetheless, the department's coverage determinations establish a consistent pattern of exempting fabrication work performed at permanent, offsite facilities from the scope of the prevailing wage law.

Local 104 contends the department's interpretation is entitled to no deference because the department has been inconsistent in its approach to the issue of offsite fabrication. We disagree. Local 104 cites the fact that the department initially determined in this case that Russ Will was required to pay prevailing wages for the offsite fabrication work associated with the project. Of course, that decision was overturned on appeal. Local 104 also relies on two coverage determinations from 2003 in which the department concluded that offsite fabrication at a permanent facility was

18

covered by the prevailing wage law. (See Pub. Works Case No. 2007–027 (March 4, 2003) *Cuesta College;* Public Works Case No. 2002-064 (March 4, 2003), *Helix Electric*.) Those decisions, too, were appealed and ultimately withdrawn. Consequently, it is not the case that the department has been inconsistent in its *final* determinations on coverage for offsite fabrication.[7] It is not correct to say the department has been inconsistent in its approach when any inconsistencies have been corrected or resolved before a determination is final.

5.      *Assessing Whether the Department's Coverage Determination was Erroneous*

Our analysis to this point leads us to the same conclusion reached by the department—that there is a lack of clear and authoritative guidance concerning whether fabrication is subject to the prevailing wage law when performed in a permanent, offsite facility of a contractor or subcontractor that does not sell supplies to the general public. The statutory framework, existing case law, and prior coverage determinations do not provide a definitive answer to this question.

In determining that the offsite fabrication performed by Russ Will was not subject to the prevailing wage law, the department reasoned that the existence and location of Russ Will's permanent, offsite shop did not turn on a particular public works contract or project. As support for its conclusion, the department relied upon a federal regulation defining the "site of the work" as used in the Davis-Bacon Act. The relevant regulation

---

[7]As further support for its contention that the department has not taken a consistent position, Local 104 cites a 2002 coverage determination in which the prevailing wage law was applied to restoration work performed at a permanent offsite shop. (Pub. Works Case No. 2002–034 (July 18, 2002) *Sacramento State Capitol Exterior Painting Project.*) In that case, decorative cast iron elements were removed from the State Capitol building and restored at the offsite shop. The coverage determination is inapposite because it involved *repair* or *alteration* instead of *fabrication* of materials for incorporation in a construction project. In distinguishing restoration work from fabrication work performed by a material supplier, the department reasoned that the company performing the restoration work did not fabricate "newly manufactured products" for delivery to a construction site but instead applied labor to cast iron pieces that were already public property. Consequently, the coverage determination is not relevant to the department's approach to offsite *fabrication.*

19

provides that the "site of the work" under the Davis-Bacon Act does not include "permanent . . . fabrication plants . . . of a contractor or subcontractor whose location and continuance in operation are determined wholly without regard to a particular Federal or federally assisted contract or project." (29 C.F.R. § 5.2(*l*)(3) (2008).) The department concluded it was appropriate to turn to the federal regulation for guidance in the absence of legislative or judicial guidance on the factual scenario presented by Russ Will.

Local 104's primary complaint on appeal is that the Director erred in relying on a federal regulation instead of applying the standard set forth in *Sansone* and *Williams.* According to Local 104, because the scope of coverage under the prevailing wage law is broader than that provided by the Davis-Bacon Act, it is inappropriate to assess coverage with the guidance of a federal regulation implementing the Davis-Bacon Act. We disagree with Local 104. As explained below, the department's reliance on a federal regulation for guidance in assessing the scope of coverage was not unreasonable under the circumstances presented here. Moreover, the department's coverage determination is consistent with *Sansone* and *Williams.*

In assessing the scope of coverage under the prevailing wage law, California courts have turned to the Davis-Bacon Act for guidance on issues not clearly answered by California authority. (See *City of Long Beach, supra,* 34 Cal.4th at p. 954.) As our Supreme Court has stated, "California's prevailing wage law is similar to the federal act and share its purposes." (*Ibid.*) "Read as a unit [the prevailing wage law] and [the Davis-Bacon Act] set out two separate, but parallel, systems regulating wages on public contracts." (*Southern Cal. Lab. Management Etc. v. Aubry* (1997) 54 Cal.App.4th 873, 883.) Thus, unless the Davis-Bacon Act is fundamentally inconsistent with the portions of the prevailing wage law that one seeks to interpret, the approach taken under the Davis-Bacon Act may provide useful guidance.

Local 104 claims that such an inconsistency exists here because the Davis-Bacon Act limits its application to the site of the work whereas the prevailing wage law contains no such geographical limitation. We are not convinced that any such difference precludes turning to the Davis-Bacon Act for guidance, at least with respect to the

20

treatment of work performed at permanent, offsite fabrication facilities. As explained above, the prevailing wage law is ambiguous concerning its geographic scope. There is no clear indication the Legislature rejected some geographical restriction on its application, particularly in the face of statutes that refer to the site of the work. Moreover, the case law that Local 104 claims provides the standard for assessing offsite work—*Sansone* and *Williams*—is premised in significant part upon the material supplier exemption under the Davis-Bacon Act. (*Sansone, supra,* 55 Cal.App.3d at pp. 442–443; *Williams, supra,* 156 Cal.App.4th at pp. 750–751.) The material supplier exemption derives from the legislative history of the Davis-Bacon Act and not from any specific statutory authority in the prevailing wage law. (See *Zachry, supra,* 344 F.2d at p. 358.) In addition, the material supplier exemption turns on the geographic location of the plant. (*Id.* at p. 359 ["the plant is not located at the site of the work"].) Thus, California law already relies upon the Davis-Bacon Act for guidance concerning offsite work and also incorporates criteria based upon the site of the work. Furthermore, the approach taken under federal law to permanent, offsite fabrication facilities is consistent with the longstanding position of the department with respect to such facilities. Under the circumstances, the department did not err in turning to the Davis-Bacon Act for guidance.[8]

Wholly apart from the question of whether the department properly relied upon a federal regulation promulgated under the Davis-Bacon Act, the department's coverage determination is consistent with the principles set forth in *Sansone* and *Williams.* Work performed at a permanent, offsite, and non-exclusive manufacturing facility does not

[8]Our conclusion concerning the propriety of relying on the Davis-Bacon Act for guidance is limited to the question of coverage for work performed at permanent, offsite fabrication facilities. We do not suggest that the department would be justified in turning to the Davis-Bacon Act as the basis for a coverage determination involving a temporary fabrication facility established to serve a particular public works project. That issue is not before us. Moreover, our analysis should not be interpreted to mean that the prevailing wage law limits coverage to the site of the public work in the same manner as the Davis-Bacon Act other than with respect to permanent fabrication facilities.

constitute an integral part of the process of construction at the site of the public work. Fabrication performed at a permanent offsite facility is independent of the performance of the construction contract because the facility's existence and operations do not depend upon a requirement or term in the public works contract. By contrast, a temporary facility set up specifically to service a public works contract could be characterized as an integral part of the construction process. Such a temporary facility's existence and purpose is driven entirely by the needs of the public works project.

Local 104 urges that the focus for purposes of deciding whether offsite fabrication is subject to the prevailing wage law should be upon whether the fabricated items are standard or customized. Presumably, Local 104 would argue that items fabricated to custom specifications are more closely integrated in the process of construction than standard items. The facts of this case demonstrate why an attempt to distinguish between customized and standard items may produce greater confusion than clarity. According to Russ Will, it could have purchased at least some of the fabricated sheet metal items from standard industry catalogs. Other items were considered custom because of the non-standard dimensions. Plainly, the standard items are not considered custom simply because Russ Will chose to fabricate them in-house instead of purchasing them from an outside supplier. Further, if the determination of coverage under the prevailing wage law turns on whether fabricated items are custom or standard, the question remains whether the fabrication work is subject to the prevailing wage law simply because some portion of the fabricated items are made to custom specifications. In short, determining whether fabricated items are custom or standard may prove to be a difficult task and may have little bearing on whether fabrication is integrated into the flow of construction.

Moreover, it is unclear why fabricating an item to customized specifications is any more integral to the construction process than fabricating a standard item needed to fulfill a contract. Regardless of whether an item is considered standard or custom, it must be fabricated according to certain specifications. From the perspective of the worker who is fabricating items for a particular public works project, the worker's role is no more integral to the process of construction when fabricating items with customized

22

specifications than it is when fabricating items with specifications that are considered standard. Accordingly, we are not persuaded that the focus should be on whether fabricated items are standard or custom.

In this case, Russ Will would have qualified as an exempt material supplier but for the fact that it does not sell supplies to the general public.[9] The question arises why coverage under the prevailing wage law in this case should turn on whether Russ Will sells products to the public at large. Sales of products to the public does not bear upon whether the fabrication performed at a permanent facility is integral to the flow of the construction process. If we were to accept Local 104's position, an offsite facility that meets the three-part material supplier test would be exempt from the prevailing wage law but another facility that is similar in all respects except for the sale of supplies to the public would be subject to the requirements of the prevailing wage law. There is no basis to make this distinction if the critical consideration under California law is whether the offsite operation is integral to the construction process.

The position taken by the department here provides certainty and clarity. As the court explained in *McIntosh v. Aubry, supra,* 14 Cal.App.4th at page 1593, "[p]arties must be able to predict the public-works consequences of their actions under reasonably precise criteria and clear precedent." A nebulous standard or set of factors governing whether offsite work is covered by the prevailing wage law would create confusion and uncertainty.

If Local 104 seeks to expand the coverage of the prevailing wage law, the issue and the associated public policy questions are best left to the Legislature. As explained by the department in the action below, "the California legislature has long been aware of the industry custom and administrative interpretation [governing offsite fabrication], and

---

[9]At oral argument on appeal, counsel for Local 104 stated that an additional reason preventing Russ Will from being considered an exempt material supplier was its custom fabrication of items for the public works project. We disagree. The purportedly custom nature of the fabricated items was not a basis for the Department's determination that Russ Will did not qualify as a material supplier. Instead, the determination turned on the fact that Russ Will did not sell products to the general public.

23

has not seen fit to mandate coverage for off-site fabrication in permanent shops, despite numerous amendments to the [prevailing wage law] over the past quarter-century." The Legislature is in the best position to judge the effects of extending the prevailing wage law and has done so when appropriate.[10]

We conclude that the department did not err in issuing the coverage determination in this case. Offsite fabrication is not covered by the prevailing wage law if it takes place at a permanent, offsite manufacturing facility and the location and existence of that facility is determined wholly without regard to the particular public works project. Because the offsite fabrication at issue here was conducted at Russ Will's permanent offsite facility, and that facility's location and continuance in operation were determined wholly without regard to the project, the work was not done "in the execution" of the contract within the meaning of section 1772.

In light of our conclusion, it is unnecessary to address any additional contentions that Russ Will raises in its appeal.

## DISPOSITION

The judgment is reversed and the matter is remanded with directions to enter a new order denying the petition for writ of mandate. Appellant shall recover its costs on appeal.

---

[10]At the request of Russ Will and amici curiae Air Conditioning Trade Association et al., we take judicial notice of (1) the Legislative Counsel's Digest for Stats. 2011, ch. 676 (Assembly Bill No. 514), and (2) the Legislative Counsel's Digest for Stats. 2011, ch. 698 (Senate Bill No. 136). (Evid. Code, § 452, subd. (a).) Russ Will and amici curiae offer these documents for the purpose of demonstrating that the Legislature has been active in amending the prevailing wage law as necessary to clarify its scope.

24

_____
McGuiness, P. J.

We concur:


_____
Pollak, J.


_____
Jenkins, J.

<u>Sheet Metal Workers' International Assocation, Local 104, Plaintiff and Respondent v. John C. Duncan, as Director, etc., et al., Defendants; Russ Will Mechanical, Inc., Real Party in Interest and Appellant. (A131489)</u>


Trial court:        City & County of San Francisco

Trial Judge:        Hon. Peter J. Busch

Counsel:

Counsel for Real Party in Interest and Appellant, Russ Will Mechanical Inc.:

Richard M. Freeman
Matthew Scott McConnell
Sheppard Mullin Richter & Hampton LLP

Counsel for Amici Curiae Associated Bilders & Contractors of California et al., on behalf of Real Party in Interest and Appellant:

Robert Fried
Thomas A. Lenz
Atkinson, Andelson, Loya, Ruud & Romo

Counsel for Amici Curiae Air Conditioning Trade Association et al., on behalf of Real Party in Interest and Appellant:

Dennis B. Cook
Barbara A. Cotter
Meggi E. Wilson
Cook Brown, LLP

Counsel for Plaintiff and Respondent, Sheet Metal Workers' International Association, Local 104:

Peter D. Nussbaum
Anne Nelson Arkush
Altshuler Berzon LLP

No appearance for Defendants and Respondents.