**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| JOHN BUSKER, on behalf of himself and all others similarly situated and the general public, *Plaintiff-Appellant*, <br><br> v. <br><br> WABTEC CORPORATION, a Pennsylvania corporation; MARK MARTIN, an individual; DOES, 1 through 100, *Defendants-Appellees.* | No. 17-55165 <br><br> D.C. No. 2:15-cv-08194-ODW-AFM <br><br><br> ORDER CERTIFYING QUESTION TO THE SUPREME COURT OF CALIFORNIA |

Filed September 6, 2018

Before: Richard R. Clifton and Consuelo M. Callahan, Circuit Judges, and Kenneth M. Hoyt,[*] District Judge.

Order

---

[*] The Honorable Kenneth M. Hoyt, United States District Judge for the Southern District of Texas, sitting by designation.

## SUMMARY[**]

**Certified Question to California Supreme Court**

In a case involving the Southern California Regional Rail Authority ("Metrolink") and a federally-mandated comprehensive communications network known as Positive Train Control ("PTC"), the panel certified the following question of state law to the Supreme Court of California:

> Whether work installing electrical equipment on locomotives and rail cars (i.e., the "on-board work" for Metrolink's PTC project) falls within the definition of "public works" under California Labor Code § 1720(a)(1) either (a) as constituting "construction" or "installation" under the statute or (b) as being integral to other work performed for the PTC project on the wayside (i.e., the "field installation work").

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## ORDER

We respectfully ask the Supreme Court of California to exercise its discretion to decide the certified question set forth in Part II of this Order, below. *See* Cal. R. Ct. 8.548. The answer to this question of California law will be dispositive of the appeal before us, and no clear controlling California precedent exists. *Id.* Moreover, because the question that we certify is of great importance to many employees in California, considerations of comity and federalism suggest that the court of last resort in California, rather than our court, should have the opportunity to answer the question in the first instance. *See Kilby v. CVS Pharmacy, Inc.*, 739 F.3d 1192, 1196–97 (9th Cir. 2013); *Klein v. United States*, 537 F.3d 1027, 1028 (9th Cir. 2008).

## I. Administrative Information

We provide the following information as required by California Rule of Court 8.548(b)(1):

The title of this case is: JOHN BUSKER, on behalf of himself and all others similarly situated and the general public, Plaintiff-Appellant v. WABTEC CORPORATION, a Pennsylvania corporation, and MARK MARTIN, an individual, Defendants-Appellees.

The case number in our court is 17-55165.

The names and addresses of counsel are:

*For Plaintiff-Appellant*: Richard E. Donahoo, Donahoo & Associates, Tustin, California; Thomas G. Foley, Jr., Kevin D. Gamarni, Foley, Bezek, Behle & Curtis, LLP, Santa Barbara, California; Tiffany J. Gates, Law Offices of Tiffany J. Gates, Santa Rosa, California; Stuart B. Esner,

Holly N. Boyer, Shea S. Murphy, Esner, Chang & Boyer, Pasadena, California.

*For Defendants-Appellees*: Patrick Madden, Todd L. Nunn, K&L Gates LLP, Seattle, Washington.

We designate John Busker as the petitioner if our request for a decision is granted. He is the appellant before our court, and he moved for an order requesting a decision from the Supreme Court of California on a question of state law.

## II. Certified Question

We request a decision by the Supreme Court of California on the following question of state law that is now before us:

> Whether work installing electrical equipment on locomotives and rail cars (i.e., the "on-board work" for Metrolink's PTC project) falls within the definition of "public works" under California Labor Code § 1720(a)(1) either (a) as constituting "construction" or "installation" under the statute or (b) as being integral to other work performed for the PTC project on the wayside (i.e., the "field installation work")?

Our phrasing of the question should not restrict the Supreme Court of California's consideration of the issues involved; that court may reformulate the question. Cal. R. Ct. 8.548(f)(5).

We agree to accept and to follow the decision of the Supreme Court of California, as we are required by both California Rule of Court 8.548(b)(2) and our own precedent.

*See Klein v. United States*, 537 F.3d 1027, 1029 (9th Cir. 2008).

## III. Statement of Facts

In October 2010, the Southern California Regional Rail Authority ("Metrolink") entered into a contract with Parsons Transportation Group, Inc., under which Parsons agreed to design, furnish, and install a federally-mandated comprehensive communications network known as Positive Train Control ("PTC"). PTC systems are designed to make rail transportation safer through the use of integrated software and a GPS-based command, control, communications, and information system to prevent collisions between trains, derailments caused by excessive speed, incursions into established work zone limits, and the movement of a train through an improperly positioned switch.

The project, which in total costs more than $216 million, was publicly funded with most of the funding coming from state and local sources. The prime contract for the PTC project contemplated two types of work. "On-board work" involved installing PTC equipment on Metrolink's locomotives and rail cars. "Field installation work" involved installing PTC systems along the wayside or tracks, including trenching, welding, installing towers for radio antennas, driving forklifts, and operating cranes. The prime contract specified that California's prevailing wage law would be applicable to the field installation work.

Parsons entered into a subcontract with defendant Wabtec Corporation, which Metrolink expressly approved as a subcontractor for the project. In accordance with the Wabtec subcontract, Wabtec supplied and installed on-board PTC systems on Metrolink's locomotives and rail cars.

Wabtec also provided back office engineering and systems integration support and enhanced locomotive simulators. Wabtec did not perform any of the field installation work.

Plaintiff, John Busker, is a former employee of Wabtec. Busker was one of over 100 workers Wabtec hired to execute the on-board work specified in the Wabtec subcontract. Busker worked on the Metrolink project for approximately two years, performing traditional electrical and electronic technician work exclusively on the locomotives and rail cars.

In May 2015, Busker filed a prevailing wage complaint with the California Department of Industrial Relations ("DIR"), Division of Labor Standards Enforcement ("DLSE"). The DLSE opened an investigation in June 2015. The DLSE investigator initially concluded the Metrolink PTC project was a public works project and issued a Civil Wage and Penalty Assessment against Parsons and Wabtec for prevailing wages of $5,786,349 and related penalties of $682,215.

Parsons and Wabtec requested review of the assessment by the Labor Commissioner. Although Metrolink acknowledged that the installation work performed on the wayside (i.e., the field installation work) is subject to prevailing wage requirements, Metrolink, Parsons, and Wabtec all took the position that the prevailing wage law does not apply to the on-board work performed under the Wabtec subcontract because trains are not "fixed works" but instead are "rolling stock." By the time Parsons and Wabtec requested review of the assessment, Busker had already filed a putative class action in Los Angeles County Superior Court, alleging that Wabtec failed to pay its employees a prevailing wage. Before the assessment was reviewed, the

DLSE released the assessment, allowing the parties to litigate the dispute exclusively in court.[1]

Wabtec removed the action to federal district court under the Class Action Fairness Act, 28 U.S.C. § 1332(d). The district court denied Busker's motion for an order remanding the case to state court, and we have affirmed that decision. The parties then agreed the prevailing wage coverage issue could be determined through a summary judgment motion. The district court granted summary judgment in favor of Wabtec. Busker timely appealed.

## IV.  Explanation for Request for a Decision

No controlling California precedent answers the certified question of statutory interpretation. We recognize that, under California law, statutory interpretation begins with the text. *People v. Scott*, 58 Cal. 4th 1415, 1421 (2014). But the text of the prevailing wage law is susceptible to both of the opposing interpretations offered by the parties. We do not find the answer to the issues of state law presented by this case to be obvious.

As discussed below, although administrative guidance favors Wabtec's view of the statute, countervailing policy considerations appear to support Busker's interpretation and no controlling California judicial precedent compels a resolution for either party. We perceive tension between the general purposes of the prevailing wage law and courts' duty to interpret the law liberally, on the one hand, and extra-

---

[1] The DLSE deputy labor commissioner who issued the initial wage assessment against Wabtec stated at his deposition that the assessment was released after he learned that Wabtec employees worked only on the train and his superior (the DLSE Assistant Chief) told him "that historically, work in the train is not covered."

textual administrative guidance, on the other hand. Additionally, although Busker's interpretation of the prevailing wage law is reasonable, adopting that interpretation arguably would require an extension of the state law (and implicit disapproval of the interpretation of the state agency tasked with enforcing the law), a decision more appropriately made by the state court.

Conceivably, resolution of the issues of statutory interpretation will have profound legal, economic, and practical consequences for employers and employees who work on publicly-funded projects in the state of California. Because of the Class Action Fairness Act, other prevailing wage disputes could (just like this one) end up being decided in federal court. Although a federal court is capable of deciding the case, a Ninth Circuit opinion would not provide the same definitive resolution to the issues of state law that the Supreme Court of California could provide.

A. *Whether the on-board work constitutes "construction" or "installation"*

California Labor Code § 1771 requires that "all workers employed on public works" be paid "not less than the general prevailing rate of per diem wages for work of a similar character in the locality in which the public work is performed."[2] Subject to an exception not relevant here, "public works" "means," "[c]onstruction, alteration, demolition, installation, or repair work done under contract and paid for in whole or in part out of public funds." Cal.

---

[2] The requirement to pay a prevailing wage does not apply to public works projects of $1,000 or less or to work carried out by a public agency with its own forces. Cal. Lab. Code § 1771.

Lab. Code § 1720(a)(1).**[3]** "The overall purpose of the prevailing wage law is to protect and benefit employees on public works projects." *Lusardi Constr. Co. v. Aubry*, 1 Cal. 4th 976, 985 (1992).

Busker argues that the work performed by Wabtec employees (i.e., the on-board work) was "[c]onstruction" and "installation" as those terms are used in California Labor Code § 1720(a)(1). Wabtec argues the on-board work cannot meet the definition of "public works" because the prevailing wage law does not cover work on "rolling stock," including locomotives and rail cars.

On the one hand, relying on dictionary definitions, Busker proffers broad, yet reasonable, meanings of "construction" and "installation," respectively. The proffered definitions likely encompass the on-board work and are consistent with both the statutory purpose of "protect[ing] and benefit[ing] workers and the public" and the directive that the statute be "liberally construed," *see City of Long Beach v. Dep't of Indus. Relations*, 34 Cal. 4th 942, 949–50 (2004).

On the other hand, Wabtec cites various administrative materials in which DIR officials have recognized that work performed on rolling stock does not fall within the definition of public works. Additionally, despite the policy in favor of liberal construction, courts "cannot interfere where the

---

**[3]** "'[C]onstruction' includes work performed during the design and preconstruction phases of construction, including, but not limited to, inspection and land surveying work, and work performed during the postconstruction phases of construction, including, but not limited to, all cleanup work at the jobsite." Cal. Lab. Code § 1720(a)(1). "'[I]installation' includes, but is not limited to, the assembly and disassembly of freestanding and affixed modular office systems." *Id.*

Legislature has demonstrated the ability to make its intent clear and chosen not to act." *City of Long Beach*, 34 Cal. 4th at 950 (internal quotation marks omitted).

>  B.  *Whether the on-board work is sufficiently related to the covered field installation work.*

Assuming the on-board work does not independently meet the definition of "public works," Busker argues the prevailing wage law nonetheless covers the on-board work because such work is sufficiently related to the field installation work performed on the wayside.  The parties agree that the field installation work meets the statutory definition of "public works."

A few appellate court decisions have addressed "whether and under what circumstances the prevailing wage law extends to work performed away from the site of a public works project." *Sheet Metal Workers' Int'l Ass'n, Local 104 v. Duncan*, 229 Cal. App. 4th 192, 200 (2014); *see, e.g.*, *Williams v. SnSands Corp.*, 156 Cal. App. 4th 742, 752–54 (2007) (treating "off-hauling" of building materials from work site as separate from onsite construction work); *O. G. Sansone Co. v. Dep't of Transp.*, 55 Cal. App. 3d 434, 441–45 (1976) (holding that the prevailing wage law covers on-hauling subbase material for highway construction project). Yet courts have not been consistent in the legal standards they have employed.

Some courts have framed the inquiry as whether the work at issue "is truly independent of the contract construction activities—i.e., whether it is integrated into the flow process of construction." *Sheet Metal Workers'*, 229 Cal. App. 4th at 206; *see also Williams*, 156 Cal. App. 4th at 752 ("What is determinative is the role the [subcontractor's work] plays in the performance or

'execution' of the public works contract."). Other courts have taken a different approach by considering whether the work at issue and the work that is indisputably covered by the prevailing wage law together result in a "complete integrated object." *Oxbow Carbon & Minerals, LLC v. Dep't of Indus. Relations*, 194 Cal. App. 4th 538, 549 (2011); *see also Cinema W., LLC v. Baker*, 13 Cal. App. 5th 194, 210–15 (2017) (focusing on the necessity of the publicly-funded work (a parking lot) to the ultimate product of the privately-funded work (a theater)).

This case likely turns on the selection of the appropriate standard. From the language of the prime contract and the Wabtec subcontract and the other information provided by the parties, it is clear that both the on-board work and the field installation work are integral to the operation of the completed project (i.e., the PTC system). If that were the correct formulation, Busker should prevail. But the contracts and other information about the project do not suggest that completion of the on-board work is integral to the completion of the field installation work. If that were the correct formulation, Wabtec's work is probably analogous to off-site work or off-hauling that courts have held to be non-integral to the construction process and thus not covered by the prevailing wage law. *See Sheet Metal Workers'*, 229 Cal. App. 4th at 214; *Williams*, 156 Cal. App. 4th at 754.[4]

---

[4] Busker also argued that Wabtec had a contractual duty to pay its employees a prevailing wage. In a memorandum disposition filed concurrently with this order, we reject Busker's breach of contract theory (and we affirm the district court's denial of Busker's motion to remand the case to state court).

## V.  Accompanying Materials

The clerk of this court is hereby directed to file in the Supreme Court of California, under official seal of the United States Court of Appeals for the Ninth Circuit, copies of all relevant briefs and excerpts of the record, and an original plus ten copies of this order, along with a certificate of service on the parties, as required by California Rule of Court 8.548(c), (d).

This case is withdrawn from submission.  The Clerk is directed to administratively close this docket, pending further order. Further proceedings before us are stayed pending final action by the Supreme Court of California. The parties shall notify the clerk of this court within seven days after the Supreme Court of California accepts or rejects the request for a decision, and again within seven days if that court renders an opinion.  The panel retains jurisdiction over further proceedings.

**IT IS SO ORDERED**.