**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LEOPOLDO PENA MENDOZA;
JOSE ARMANDO CORTES; ELVIZ
SANCHEZ,
*Plaintiffs-Appellants*,

v.

FONSECA MCELROY GRINDING
CO., INC.; GRANITE ROCK
COMPANY,
*Defendants-Appellees.*

No. 17-15221

D.C. No.
3:15-cv-05143-WHO

ORDER
CERTIFYING
QUESTION TO THE
CALIFORNIA
SUPREME COURT

Filed January 15, 2019

Before: RAYMOND C. FISHER and MILAN D. SMITH,
JR., Circuit Judges, and ELAINE E. BUCKLO,* District
Judge.

Order

---

*The Honorable Elaine E. Bucklo, United States District Judge for
the Northern District of Illinois, sitting by designation.

## SUMMARY[**]

---

### Labor Law

The panel certified the following question to the California Supreme Court:

> Is operating engineers' offsite "mobilization work"—including the transportation to and from a public works site of roadwork grinding equipment—performed "in the execution of [a] contract for public work," Cal. Lab. Code § 1772, such that it entitles workers to "not less than the general prevailing rate of per diem wages for work of a similar character in the locality in which the public work is performed" pursuant to section 1771 of the California Labor Code?

---

### ORDER

This appeal requires us to resolve whether offsite mobilization work conducted in connection with a public works project is performed "in the execution of [a] contract for public work" such that it entitles workers to prevailing wages pursuant to the California Labor Code. Cal. Lab. Code §§ 1771–72. Whether the scope of the prevailing wage law is expanded or limited, the answer to this question could have a significant impact on California workers.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

We find no controlling precedent in the decisions of the California Supreme Court or Courts of Appeal, *see* Cal. R. Ct. 8.548(a)(2), and "considerations of comity and federalism suggest that the court of last resort in California, rather than our court, should have the opportunity to answer the question in the first instance." *Busker v. Wabtec Corp.*, 903 F.3d 881, 882 (9th Cir. 2018). We therefore respectfully ask the Supreme Court of California to exercise its discretion to decide the certified question set forth in Part I of this order.

## I.  Certified Question

Pursuant to Rule 8.548 of the California Rules of Court, we request that the California Supreme Court answer the following question of state law:

> Is operating engineers' offsite "mobilization work"—including the transportation to and from a public works site of roadwork grinding equipment—performed "in the execution of [a] contract for public work," Cal. Lab. Code § 1772, such that it entitles workers to "not less than the general prevailing rate of per diem wages for work of a similar character in the locality in which the public work is performed" pursuant to section 1771 of the California Labor Code?

The Court may reformulate our question, and its exposition of the issues involved should not be limited by the question's phrasing. Cal. R. Ct. 8.548(f)(5). We will accept and follow the Court's decision. Cal. R. Ct. 8.548(b)(2).

## II.  Background

Plaintiffs-Appellants Leopoldo Pena Mendoza, Elviz Sanchez, and Jose Armando Cortes (Plaintiffs) are operating engineers and members of Operating Engineers Local No. 3. They worked on grinding crews, using milling equipment to break up and crush asphalt roadbeds so that new roads could be constructed.  At times, their work duties included what they referred to as "mobilization" work, which

> entailed loading milling machines, which w[ere] stored at [a] permanent yard or in offsite storage locations, onto a lowbed trailer; tying down or otherwise securing the heavy equipment onto the lowbed trailer; performing a light, brake, and fluid level check of a semi-truck used to transport the heavy equipment; driving a transport truck transporting the milling machine to a construction jobsite; and driving the transport truck transporting the milling machine back to [the] permanent yard.

As part of this mobilization process, Plaintiffs reported to a designated yard where the equipment was housed, and then performed the maintenance and transportation work. Neither the permanent yard nor the offsite storage locations depended on any public works project for their existence.

Defendant-Appellee Fonseca McElroy Grinding Co. Inc. (FMG), a roadwork construction company, was acquired by Defendant-Appellee Granite Rock Company (Granite Rock, and together with FMG, Defendants) in 2014.  FMG and Granite Rock were both signatory parties to the Operating Engineers Local No. 3 Master Agreement for Northern California (Master Agreement).  In 2010, FMG entered into

an additional Memorandum of Agreement (MOA) with Local No. 3, which provided for a "Lowbed Transport" wage rate for mobilization work; this rate for offsite work was lower than the Master Agreement rates for onsite construction.  Granite Rock was also a signatory to the MOA.

Plaintiffs worked for FMG and then Granite Rock, including on public works construction projects, and received compensation based on the Master Agreement and MOA.  Accordingly, although they received a prevailing wage for onsite construction on public works projects, they were *not* paid a prevailing wage for offsite mobilization work.  Plaintiffs estimate that "[t]he ballpark difference between the two overtime rates in August [] 2012 was $67.72 (prevailing wage) and $23.89 (lowbed transportation) for an underpayment of $38.38 in the base pay."  Defendants note that "[t]he public works contracts under which Plaintiffs worked did not specify the daily schedule for Granite Rock's workers," and "[t]hus Granite Rock determined whether [they] would report directly to the construction jobsite or its yard" and "what tasks, if any, [they] would perform after completing their jobsite work."[1]

On November 9, 2015, Mendoza brought claims under the Fair Labor Standards Act and California labor laws for nonpayment of wages.  Three months later, he, along with Sanchez and Cortes, filed an amended complaint.

The parties addressed the dispute that forms the basis of this appeal through cross-motions for partial summary judgment, which the district court heard on October 26,

---

[1] The contracts for the specific work at issue in this case were not included in the record before us.

2016.  On November 28, 2016, the court entered an order in which it concluded that the offsite mobilization of equipment was not "in the execution" of a public works contract. *Mendoza v. Fonseca McElroy Grinding Co.*, No. 15-cv-05143-WHO, 2016 WL 6947552, at \*1 (N.D. Cal. Nov. 28, 2016).  Following this determination, the parties settled all remaining issues, except the dispute now before us.

A timely appeal to this court followed, raising the question of California law posed in Part I.

## III.    Explanation of Request for Certification

Under California law, "not less than the general prevailing rate of per diem wages for work of a similar character in the locality in which the public work is performed . . . shall be paid to all workers employed on public works."  Cal. Lab. Code § 1771.  This prevailing wage requirement applies to "[w]orkers employed by contractors or subcontractors *in the execution of any contract for public work*."  *Id.* § 1772 (emphasis added).

The California Supreme Court has explained that

> [t]he overall purpose of the prevailing wage law . . . is to benefit and protect employees on public works projects.  This general objective subsumes within it a number of specific goals: to protect employees from substandard wages that might be paid if contractors could recruit labor from distant cheap-labor areas; to permit union contractors to compete with nonunion contractors; to benefit the public through the superior efficiency of well-paid employees; and to compensate nonpublic employees with higher wages for the absence

of job security and employment benefits enjoyed by public employees.

*Lusardi Constr. Co. v. Aubry*, 824 P.2d 643, 649 (Cal. 1992). It has also emphasized that the prevailing wage law should be construed liberally. *City of Long Beach v. Dep't of Indus. Relations*, 102 P.3d 904, 908 (Cal. 2004).

On appeal, we are asked to determine whether Plaintiffs were employed "in the execution of" a public works contract when they performed offsite mobilization work, including maintenance and transportation of equipment.

## A.  Related Precedent

We note, as did the district court, that California courts have not previously addressed the applicability of the prevailing wage statute to offsite mobilization work performed by workers employed on public works projects. *See Mendoza*, 2016 WL 6947552, at *1.  However, the analytical framework developed in two California Court of Appeal decisions—*Williams v. SnSands Corporation*, 67 Cal. Rptr. 3d 606 (Ct. App. 2007), and *Sheet Metal Workers' International Association, Local 104 v. Duncan*, 176 Cal. Rptr. 3d 634, 650 (Ct. App. 2014)—might provide guidance.

In *Williams*, the Court of Appeal addressed whether a material subcontractor's truck drivers who hauled materials away from a public works site were employed "in the execution of" a public works contract or, like bona fide material suppliers, were exempt from the prevailing wage requirement.  67 Cal. Rptr. 3d at 610, 613–14.  To resolve this issue, the court explained that it needed to determine "the role the transport of the materials plays in the

performance or 'execution' of the public works contract."
*Id.* at 613.  It noted that

> [t]he familiar meaning of "execution" is "the
> action of carrying into effect (a plan, design,
> purpose, command, decree, task, etc.);
> accomplishment"; "the act of carrying out or
> putting into effect"; "the act of carrying out
> fully or putting completely into effect, doing
> what is provided or required."  Therefore, the
> use of "execution" in the phrase "in the
> execution of any contract for public work,"
> plainly means the carrying out and
> completion of all provisions of the contract.

*Id.* at 611 (citations omitted) (first quoting 5 *Oxford English Dictionary* 521 (2d ed. 1989); then quoting *Black's Law Dictionary* 405 (8th ed. 2004); and then quoting *Webster's 10th New Collegiate Dictionary* 405 (2001)).  Borrowing from a previous material supplier exemption case, *O. G. Sansone Co. v. Dep't of Transp.*, 127 Cal. Rptr. 799 (Ct. App. 1976),[2] the court distilled three factors to consider: (1) "whether the transport was required to carry out a term of the public works contract"; (2) "whether the work was

---

[2] In *O. G. Sansone*, the Court of Appeal considered whether two companies that performed hauling work on a public works contract were required to pay prevailing wages.  127 Cal. Rptr. at 801–02.  The companies' employees hauled materials to the public works site from locations adjacent to the site that were created to serve the project, and the materials they hauled were identified in the public works contract and had not been acquired from a "standard commercial supplier."  *Id.* at 803.  The court held that because the truckers hauled materials from a project-exclusive site under private agreements that were necessary to fulfill the terms of the contract, their employer was a subcontractor who needed to pay the prevailing wage.  *Id.* at 804.

performed on the project site or another site integrally connected to the project site"; and (3) "whether work that was performed off the actual construction site was nevertheless necessary to accomplish or fulfill the contract." *Williams*, 67 Cal. Rptr. 3d at 613. Applying these factors, the court concluded that the truckers' off-hauling work was "unrelated" to the public works contracts and that the truckers, who were not otherwise employed on the public works project, fell within the material supplier exemption. *Id.* at 614. "In the absence of evidence that, either by contract or custom, the off-hauling . . . was "'an integrated aspect of the 'flow' process of construction,"'" the *Williams* court determined that the prevailing wage statute did not apply to the employees of a material supplier. *Id.* (quoting *O. G. Sansone*, 127 Cal. Rptr. at 804).

In *Sheet Metal Workers*, the Court of Appeal reviewed "whether the prevailing wage law applies to an employee of a subcontractor who fabricates materials for a public works project at a permanent offsite manufacturing facility that is not exclusively dedicated to the project." 176 Cal. Rptr. 3d at 637. The court recognized that "the prevailing wage law is ambiguous concerning its geographic scope. There is no clear indication the Legislature rejected some geographical restriction on its application, particularly in the face of statutes that refer to the site of the work." *Id.* at 650. The court distinguished a hauling case like *Williams* in light of this geographic consideration, noting that "hauling activities necessarily have at least a limited geographical connection to the public works site," whereas "offsite fabrication could theoretically take place anywhere in the world." *Id.* at 646. It further noted that the Department of Industrial Relations

(DIR)[3] had previously determined that "fabrication work performed at a permanent offsite facility not exclusively dedicated to the public works project is not covered by the prevailing wage law, whereas fabrication work performed at a temporary facility that is dedicated to the project is covered." *Id.* at 648. The DIR had explained that "extending coverage to offsite fabrication would not significantly protect local labor markets, because fabrication does not necessarily take place in the local labor market." *Id.* at 647. Applying the analysis from *O. G. Sansone*, the DIR concluded that "the sheet metal supplier was exempt from the prevailing wage requirements as a material supplier because it was a standard supplier of sheet metal products to the general public, its facility existed long before the public works contract, and the facility was not located on or near the site of the public work." *Id.* After considering these factors and the DIR's determination, the *Sheet Metal Workers* court similarly concluded that "[w]ork performed at a permanent, offsite, nonexclusive manufacturing facility does not constitute an integral part of the process of construction at the site of the public work." *Id.* at 650.

---

[3] The DIR is charged with "determin[ing] the general prevailing rate" based on "the applicable wage rates established by collective bargaining agreements and the rates that may have been predetermined for federal public works, within the locality and in the nearest labor market area," and other factors. Cal. Lab. Code §§ 1770, 1773; *see also State Bldg. & Constr. Trades Council of Cal. v. Duncan*, 76 Cal. Rptr. 3d 507, 511–12 (Ct. App. 2008) (reviewing the DIR's role in wage determinations). Upon request, it also makes "determination[s] of whether a specific project or type of work awarded or undertaken by a political subdivision is a public work." Cal. Lab. Code § 1773.5(b).

## B. Application to Plaintiffs' Offsite Mobilization Work

The outcome of this appeal might depend on whether *Williams* and *Sheet Metal Workers* properly apply in this context.  Although neither case is directly on point, both might be sufficiently analogous to our case such that similar reasoning should be brought to bear.

Plaintiffs' offsite mobilization efforts are at least partially comparable to the hauling work in *Williams* and the fabrication work in *Sheet Metal Workers*.  As with the latter's fabrication shop, the offsite yards where Plaintiffs undertook their mobilization work "do not depend on any particular public works project for their existence."  Their work is therefore distinguishable from, for example, the hauling of materials from sites "located adjacent to and established exclusively to serve the [public works] project site."  *O. G. Sansone*, 127 Cal. Rptr. at 801.  The second *Williams* factor would thus militate against applying the prevailing wage law, as Plaintiffs' mobilization work was not "performed on [a public works] project site or another site integrally connected to the project site."  67 Cal. Rptr. 3d at 613.

As to the first *Williams* factor—"whether the transport was required to carry out a term of the public works contract," *id.* at 613—the record does not provide any such terms from the contract, and, as the district court noted, there is "no evidence of the custom or practice of the industry regarding transportation of heavy equipment to public works project sites."  *Mendoza*, 2016 WL 6947552, at *7.  Had Plaintiffs supplied evidence that the offsite mobilization work was "an integrated aspect of the 'flow' process of construction," *Williams*, 67 Cal. Rptr. 3d at 612, then this case might be more easily resolved.  However, no such

evidence is presented, either from the terms of the public works contract or with regards to industry custom. The contract itself is not included in the record, and although Plaintiffs requested judicial notice of a variety of materials—mostly DIR wage determinations for other types of work—none of these documents relates to the offsite mobilization of grinding equipment, let alone provides evidence that these tools, or the work to prepare them, were essential components of the public works project.[4]

Finally, as to the third *Williams* factor—"whether work that was performed off the actual construction site was nevertheless necessary to accomplish or fulfill the contract," *id.* at 613—the district court observed that California courts have considered transportation to be integral to public work in the context of *materials*, rather than *tools*. *Mendoza*, 2016 WL 6947552, at \*7.[5] The court determined that a milling

---

[4] Rather than rely on such evidence, Plaintiffs instead argue that it is self-evident that the milling machines were integral to the public works project because "one can safely say that without the [milling machine] on site, the job of grinding up the roadbed could not be performed and the contract executed."

[5] Drawing a bright line between materials and tools in this way is plausible, but not obvious. On the one hand, because materials are integrated into a jobsite and are not reusable, they are exclusively devoted to a public works project in a way that tools are not. This "exclusivity" is an ongoing theme in the relevant case law, as demonstrated, for example, by the focus on whether an offsite facility was created for a public works project, or whether a materialman also sold supplies to the general public. *See, e.g.*, *O. G. Sansone*, 127 Cal. Rptr. at 803–04. Tools do not have this inherent characteristic of exclusivity: the reason for a tool to come and go from a jobsite may be for its protection or alternative use, which serves the *contractor's* interest, not the interest of the public works project. On the other hand, the milling machines that Plaintiffs transported constituted a highly significant component of the public works project on which they were

machine is "more akin to a tool, not a building material," and on that basis distinguished Plaintiffs' mobilization efforts from other work that involved "a building material, like aggregate subbase or asphalt," and therefore satisfied the third *Williams* factor.  *Id.*[6]  The court also expressed concern about a potential slippery slope, pondering whether Plaintiffs' "argument could be used to justify application of the prevailing wage law to the transportation of many things needed for a public works construction job, such as 'tools, portable toilets, generators, potable water, lumber, asphalt, [and] steel,'" and noting that "[t]he California Court of Appeal has cautioned against an interpretation under which 'nearly any activity related to the completion or fulfillment of a public works contract would be subject to the prevailing wage law, regardless of where it takes place or whether it plays a substantial role in the process of construction.'" *Id.* at *8 (quoting *Sheet Metal Workers*, 176 Cal. Rptr. 3d at 642).

In short, application of the three *Williams* factors suggests—albeit not conclusively—that Plaintiffs did not

---

employed.  The heavy equipment was specifically tailored to perform the type of work required by the project, and unlike other construction tools, was not widely usable in other contexts.  In this sense, the milling machines might have been "necessary to accomplish or fulfill the contract" to an even greater degree than common construction tools like portable toilets or generators, or generic materials like asphalt. *Williams*, 67 Cal. Rptr. 3d at 613.

[6] The court cited *O. G. Sansone*'s discussion of *Green v. Jones*, 128 N.W.2d 1 (Wis. 1964), in which the Wisconsin Supreme Court determined that haulers were covered by the prevailing wage law when they hauled materials that "were dumped or spread directly on the roadbed and were immediately used in the construction of the project." *O. G. Sansone*, 127 Cal. Rptr. at 804 (citing *Green*, 128 N.W.2d at 7).

perform the offsite mobilization work in the execution of a public works contract such that the prevailing wage law applied.[7]

However, other considerations suggest a contrary conclusion. To begin, the distinctions between *Williams* and *Sheet Metal Workers* and this case are significant. Unlike the workers in those cases, Plaintiffs performed work on the public works site that indisputably qualified for the prevailing wage, leaving us to determine whether work they performed offsite in connection with those efforts should be similarly compensated. Whether wage rates for workers employed on a public works project should vary based on the task performed is a different inquiry from whether a class

---

[7] Additionally, although not controlling, the federal Davis-Bacon Act provides support for this result. "California courts have turned to the Davis-Bacon Act for guidance on issues not clearly answered by California authority." *Sheet Metal Workers*, 176 Cal. Rptr. 3d at 649–50 ("[U]nless the Davis-Bacon Act is fundamentally inconsistent with the portions of the prevailing wage law that one seeks to interpret, the approach taken under the Davis-Bacon Act may provide useful guidance."). The Davis-Bacon Act "plainly imposes a geographical limitation on the application of the federal prevailing wage law," *id.* at 642, as it applies to "mechanics and laborers employed directly on the site of the work." 40 U.S.C. § 3142(c)(1). The "site of work" does *not* include "permanent home offices, branch plant establishments, fabrication plants, tool yards, etc., of a contractor or subcontractor whose location and continuance in operation are determined wholly without regard to a particular Federal or federally assisted contract or project." 29 C.F.R. § 5.2(l)(3). The same regulation also specifies that "the transportation of materials or supplies to or from the site of the work by employees of the construction contractor or a construction subcontractor is not 'construction, prosecution, completion, or repair.'" *Id.* § 5.2(j)(2). Accordingly, although the Davis-Bacon Act is not dispositive, interpreting Plaintiffs' offsite mobilization work as outside "the execution of" a public works contract is consistent with the Act's guidance.

of employees is sufficiently involved in a public works project to be considered employed in the execution of a public works contract, and *Williams* and *Sheet Metal Workers* only addressed the latter issue. Furthermore, the Court of Appeal's geographic concern in *Sheet Metal Workers*—specifically, that the manufacturing work at issue there could conceivably have been undertaken anywhere, and thus did not necessarily implicate the policy concern underlying the prevailing wage law—is not present here. Plaintiffs' mobilization and transportation work was geographically confined to areas in reasonable proximity to the public works site. Lastly, whereas *Williams* involved a worker with "the status of a bona fide materials supplier," 67 Cal. Rptr. 3d at 613–14, Plaintiffs directly worked for a public works contractor, not a materials supplier. These notable distinctions suggest that *Williams* and *Sheet Metal Workers* might be of limited use in answering the question that forms the basis of this appeal.

Additionally, Plaintiffs rely on the DIR's interpretations of its Public Works Manual and prevailing wage determinations, which, they contend, "show that mobilization is part and parcel of a contractor's prevailing wage obligations." They acknowledge that "a published determination is not a legal opinion or a position statement"—a position echoed by the Public Works Manual, which asserts that it "is not intended as a comprehensive summary of existing law or duly promulgated regulations" and "should not be relied upon" to "establish rules of general application." However, "[a]lthough the [DIR] has determined that its coverage determinations do not have precedential value, the determinations nonetheless constitute administrative interpretations entitled to considerable deference." *Sheet Metal Workers*, 176 Cal. Rptr. 3d at 647.

The relevant provision of the Public Works Manual reads as follows:

> Travel time related to a public works project constitutes "hours worked" on the project, which is payable at not less than the prevailing rate based on the worker's classification, unless the Director's wage determination for that classification specifically includes a lesser travel time rate. (See Director's Decision in *In the Matter of Kern Asphalt Paving & Sealing Co., Inc.* (March 28, 2008), Case No. 04-0117-PWH. (*See also Morillion v. Royal Packing Co.* (2000) 22 Cal.4th 575).) Travel time required by an employer after a worker reports to the first place at which his or her presence is required by the employer is compensable travel time, and includes travel **to a public work site**, whether from the contractor's yard, shop, another public work site, or a private job site. All such compensable travel time must be paid at the same prevailing wage rate required for the work actually performed by the worker **at the public works site.** No additional facts, such as whether tools or supplies are being delivered by the worker to the site, need be present.

Given that DIR decisions, while not binding, are at the very least revealing, this provision seems to favor Plaintiffs' position. This is particularly true because the provision was undergirded by the DIR's decision in *In re Kern Asphalt Paving & Sealing Co.*, No. 04-0117-PWH, in which it concluded that travel time was compensable at the prevailing

wage for employees' work on a public jobsite.  With regard to the prevailing wage, the DIR wrote:

> The relevant prevailing wage determinations contain no special rate for travel time.  In the absence of any evidence to the contrary, the required travel time must be regarded as incidental to the workers' regular duties and payable at the same prevailing rates that apply to the classification associated with those duties.  [The employer] has presented no argument or evidence supporting a different rate outside of its contention that it was not obligated to pay for the travel time at all.

(footnote omitted).   Although this determination supports Plaintiffs' position, DIR determinations must be designated as precedential in order "to be relied upon in subsequent determinations," *State Bldg. & Constr. Trades Council of Cal. v. Duncan*, 76 Cal. Rptr. 3d 507, 515 (Ct. App. 2008) (citing Cal. Gov't Code § 11425.60), and *Kern Asphalt* was not so designated.   *See Director's Prevailing Wage Enforcement Decisions (Labor Code section 1742) (2007 to present)*, Dep't of Indus. Relations, http://www.dir.ca.gov/o prl/PrevWageEncDecision.htm (last visited Jan. 7, 2019) (listing *Kern Asphalt* among decisions that "have not been designated precedential and, therefore, . . . cannot be relied on as authority in future cases").  Nevertheless, the reasoning and conclusion of *Kern Asphalt* are instructive, if not binding, even though the courts bear the ultimate responsibility for interpreting the statutory language of the prevailing wage law.  *See City of Long Beach*, 102 P.3d at 910 ("When an administrative agency construes a statute in adopting a regulation or formulating a policy, the court will

respect the agency interpretation as one of several interpretive tools that may be helpful. In the end, however, '[the court] must . . . independently judge the text of the statute.'" (alterations in original) (quoting *Agnew v. State Bd. of Equalization*, 981 P.2d 52, 60 (Cal. 1999))).

## C.  Summation

Ultimately, no California court has addressed whether offsite mobilization work, performed by workers who are otherwise employed on a public works project, entitles the workers to prevailing wages for those efforts. We note that the various possible outcomes to this question could yield wide-ranging results. For example, a broader application of *Kern Asphalt* might result in an extension of prevailing wages to a range of public works-adjacent activities, including mobilization and travel. Alternatively, endorsement of the district court's analysis might limit prevailing wages only to work that satisfies the factors set forth by the Court of Appeal in *Williams*, and thus limit wages for workers employed on public works projects when they perform offsite tasks, even when that work is closely related to their onsite employment. Resolution of this issue might also implicate, as the district court noted, workers who haul other equipment to public works sites, from generators and scaffolding to water and portable toilets.

Given the potential scope of this decision, its impact on California workers, and the absence of guiding precedent, we conclude that certification to the California Supreme Court of the question presented in Part I is appropriate.

## IV.    Administrative Information

We provide the following information as required by California Rule of Court 8.548(b)(1).

The title of this case is: LEOPOLDO PENA MENDOZA, JOSE ARMANDO CORTES, and ELVIZ SANCHEZ, Plaintiffs-Appellants v. FONSECA MCELROY GRINDING CO., INC and GRANITE ROCK COMPANY, Defendants-Appellees.

The case number in our court is 17-15221.

Plaintiffs-Appellants Leopoldo Pena Mendoza, Jose Armando Cortes, and Elviz Sanchez are represented by the following counsel:

Tomas E. Margain and Huy Ngoc Tran
Justice at Work Law Group
84 West Santa Clara Street, Suite 790
San Jose, California 95113

Defendants-Appellees Fonseca McElroy Grinding Co., Inc. and Granite Rock Company are represented by the following counsel:

Paul V. Simpson
Simpson, Garrity, Innes & Jacuzzi, PC
601 Gateway Boulevard, Suite 950
South San Francisco, California 94080

We designate Leopoldo Pena Mendoza, Jose Armando Cortes, and Elviz Sanchez as the petitioners if our request for a decision is granted, as they are the appellants before our court.

The clerk of this court shall submit to the California Supreme Court, under seal of the United States Court of Appeals for the Ninth Circuit, copies of all relevant briefs and excerpts of record, as well as an original and ten copies

of this order, with a certificate of service on the parties.  Cal. R. Ct. 8.548(c)–(d).

This case is withdrawn from submission.  Further proceedings before us are stayed pending the California Supreme Court's decision.  The parties shall notify the clerk of this court within seven days after the California Supreme Court accepts or declines this request, and again within seven days if the California Supreme Court issues a decision. The panel retains jurisdiction over further proceedings.  The clerk is directed to administratively close this docket, pending further order.

**IT IS SO ORDERED.**