**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ALLIED PREMIER INSURANCE, a Risk Retention Group; a Connecticut corporation, *Plaintiff-Appellee*, | No. 20-55099 |
| | D.C. No. 5:18-cv-00088-JGB-KK |
| v. | |
| UNITED FINANCIAL CASUALTY COMPANY, an Ohio corporation, *Defendant-Appellant.* | ORDER CERTIFYING QUESTION TO CALIFORNIA SUPREME COURT |

Appeal from the United States District Court
for the Central District of California
Jesus G. Bernal, District Judge, Presiding

Argued and Submitted February 11, 2021
Pasadena, California

Filed March 22, 2021

Before: Diarmuid F. O'Scannlain, Consuelo M. Callahan, and John B. Owens, Circuit Judges.

Order by Judge O'Scannlain

# SUMMARY[*]

### Certification to California Supreme Court

The panel certified to the California Supreme Court the following question:

> Under California's Motor Carriers of Property Permit Act, Cal. Veh. Code §§ 34600 *et seq*., does a commercial automobile insurance policy continue in full force and effect until the insurer cancels the corresponding Certificate of Insurance on file with the California Department of Motor Vehicles, regardless of the insurance policy's stated expiration date?

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**ORDER**

O'SCANNLAIN, Circuit Judge:

Pursuant to California Rule of Court 8.548, we certify to the California Supreme Court the question of law set forth in Part I of this order. The answer to this question is determinative of the cause pending before this court, and there appears to be no controlling precedent in the decisions of the California Supreme Court or the California Courts of Appeal.

## I

The question to be answered is:

> Under California's Motor Carriers of Property Permit Act, Cal. Veh. Code §§ 34600 *et seq*., does a commercial automobile insurance policy continue in full force and effect until the insurer cancels the corresponding Certificate of Insurance on file with the California Department of Motor Vehicles, regardless of the insurance policy's stated expiration date?

The California Supreme Court may rephrase the question as it deems necessary.

## II

Counsel for Plaintiff-Appellee Allied Premier Insurance ("Allied") is:

Hillary Arrow Booth
Booth LLP
11835 W. Olympic Boulevard, Suite 600E
Los Angeles, CA 90064
(310) 641-1800

Counsel for Defendant-Appellant United Financial Casualty Company ("United") is:

Patrick M. Howe
Patrick Howe Law, APC
402 W. Broadway, Suite 1025
San Diego, CA 92101
(619) 398-3422

### III

### A

United issued a commercial auto insurance policy to José Porras, a commercial truck driver in California. The insurance policy went into effect on May 2, 2013. At Porras's request, United subsequently submitted a Certificate of Insurance to the California Department of Motor Vehicles ("DMV") to provide evidence of Porras's financial responsibility as a motor carrier of property, as required by California law. Cal. Veh. Code § 34630.

On April 12, 2015, United's insurance policy lapsed pursuant to its own terms when Porras failed to renew it. Nonetheless, a Certificate of Insurance filed by United on

Porras's behalf remained on file with the DMV due to a clerical error by United.[1]

Porras then became insured under a commercial auto policy issued by Allied, which went into effect on April 13, 2015. Allied submitted a Certificate of Insurance to the DMV on Porras's behalf. After April 17, 2015, the DMV

---

[1] The Certificate of Insurance at issue appears to have been filed on May 2, 2013. The record reveals that United attempted to file a Notice of Cancellation with the DMV on November 5, 2013 to cancel a Certificate of Insurance that it had previously filed on Porras's behalf. Such Notice of Cancellation was not processed by the DMV, however, because the policy number or effective date on the Notice of Cancellation was determined not to be on file. The DMV sent United a Notice of Incomplete Filing on November 7, 2013 declining to process the Notice of Cancellation and it does not appear that United responded.

Presumably, the previously filed Certificate of Insurance referenced in United's defective November 5, 2013 Notice of Cancellation remained on file with the DMV. We can only speculate regarding the precise documentation involved because the parties failed to provide a complete record with respect to this question.

Nevertheless, we cannot help but remark that the record also contains a subsequent Notice of Cancellation filed by United on February 6, 2015, with an effective date of April 12, 2015. There is no indication in the record that United's February 6, 2015 filing was rejected by the DMV. We must assume that the DMV received and processed the February 6, 2015 filing in the usual course of business, and that a previously filed Certificate of Insurance referenced in the filing was canceled.

It appears to us that Allied is relying on a technically defective Notice of Cancellation from November 5, 2013, notwithstanding the fact that it must have been fully apprised that United's insurance policy terminated on April 12, 2015, and that the DMV accepted and processed United's final Notice of Cancellation. This sequence raises a serious question regarding the equitableness of Allied's position, which is discussed further below.

had on file Certificates of Insurance for Porras from both United and Allied. The record is unclear as to the date of United's filed Certificate upon which Allied relies.

On September 1, 2015, Porras was involved in a vehicle collision with Jennifer Jones, a 24-year-old woman, in Rialto, California. Jones died as a result of the collision. Jones's parents subsequently filed a wrongful death lawsuit against Porras in California state court. Allied defended Porras in the lawsuit and ultimately settled the lawsuit for $1 million. United declined to defend Porras or to contribute to the settlement of the lawsuit.

B

Allied then sued United in a separate action in California state court, seeking to recover half of the $1 million expended to settle the wrongful death action against Porras. Allied's complaint states claims for declaratory relief, equitable contribution, and equitable subrogation.

Allied's theory is that, because United failed to complete the necessary steps to cancel the Certificate of Insurance on file with the DMV, the policy remained in effect by operation of law at the time of the collision. Accordingly, Allied contends that United is required to share with Allied in the costs of settling the wrongful death action against Porras.

United removed the suit to federal court, invoking federal diversity jurisdiction under 28 U.S.C. § 1332. The parties filed cross-motions for summary judgment, each based on a joint statement of stipulated facts and exhibits.

The district court agreed with Allied and determined that United's failure to cancel the Certificate of Insurance on file

with the DMV caused the insurance policy to continue in full force and effect until the time of the September 1, 2015 collision.  The district court proceeded to enter judgment in favor of Allied, and against United, in the amount of $500,000.

IV

A

This dispute turns on the proper interpretation of California's Motor Carriers of Property Permit Act ("MCPPA"), Cal. Veh. Code §§ 34600 *et seq.*, the statutory scheme by which California imposes financial responsibility requirements on commercial drivers.[2]  If the MCPPA requires a commercial auto insurance policy to remain in effect indefinitely until the insurer cancels the Certificate of Insurance on file with the DMV, then Allied must prevail.  If not, United must prevail.

The MCPPA was enacted by the California legislature in 1996 to replace the Highway Carriers' Act ("HCA"). The MCPPA shifted the responsibility for regulation of commercial drivers from the California Public Utilities Commission to the DMV.  The ambiguity in this matter is whether the MCPPA made other modifications to the HCA's framework for regulation of commercial drivers.

---

[2] The MCPPA requires motor carriers to prove that they have adequate protection against liability.  Cal. Veh. Code § 34630.  Under the MCCPA, a motor carrier's failure to provide evidence of adequate financial responsibility results in suspension of its permit to operate in California. *Id.*

1

Under the now-repealed HCA, the California Supreme Court had made clear that a commercial driver's insurance policy would remain in effect, regardless of its stated expiration date, until the insurer provided written notice to the Public Utilities Commission that the policy was canceled.  In *Transamerica v. Tab Transportation*, the California Supreme Court held that, because an insurer had failed to provide such notice, the driver's insurance policy continued in full force and effect—notwithstanding the policy's express terms.  12 Cal. 4th 389, 402–03 (1995).  Accordingly, the first insurer was required to compensate another insurer that had paid to settle claims against the driver arising from a collision that occurred years after the first insurer's policy had ostensibly expired.  *Id.* at 403.

2

We have reason to doubt that the same principle applies to the currently-effective MCPPA, however, as the language of the new statute differs from that of the old one.

The MCPPA revised the HCA's requirement that a "policy of insurance" be filed with the Public Utilities Commission as proof of a driver's financial responsibility.[3]  *See* Cal. Pub. Util. Code § 3631 (West 1995).  Today, the MCPPA requires only the filing of a Certificate of Insurance with the DMV to verify the driver's maintenance of adequate insurance coverage and does not require the filing of the underlying insurance policy.  Cal. Veh. Code § 34630.

---

[3] The HCA authorized the filing of a Certificate of Insurance only as a substitute for the filing of a physical duplicate of the policy.  Cal. Pub. Util. Code § 3631 (West 1995).

More importantly, the MCPPA modified the HCA's requirement that an insurer provide notice to the Public Utilities Commission prior to cancellation of a motor carrier's insurance policy. The old statute had explicitly prohibited an insurer from cancelling a motor carrier's insurance policy without prior written notice to the Public Utilities Commission. *See* Cal. Pub. Util. Code § 3634 (West 1995) ("The policy of insurance . . . shall not be cancelable on less than 30 days' written notice to the commission . . . .").

By contrast, the MCPPA prohibits only an insurer's cancellation of a Certificate of Insurance, as distinguished from an insurance policy, without prior notice to the DMV. Cal. Veh. Code § 34630(b). ("The certificate of insurance shall not be cancelable on less than 30 days' written notice from the insurer to the department . . . ."); *id.* at § 34631.5(b)(3) ("A certificate of insurance, evidencing the protection [required by § 34631.5(a)], shall not be cancelable on less than 30 days' written notice to the department, the notice to commence to run from the date notice is actually received at the office of the department in Sacramento."). Moreover, the MCPPA requires that each Certificate of Insurance "contain a provision that the certificate . . . shall remain in full force and effect until canceled" in the prescribed manner, but the MCPPA appears not to impose such a requirement with respect to an underlying insurance *policy*. *Id.* at § 34631.5(b)(4).

3

Thus, it is unclear whether *Transamerica*'s rule—that a commercial driver's insurance policy remains in effect until the insurer provides notice to the relevant agency that the policy will be canceled—survives the textual changes between the HCA and MCPPA. There is no published

California case law addressing this question—indeed, there appear to be no California precedents interpreting the MCPPA's cancellation provisions at all.  In light of the differences between the HCA and the MCPPA, we remain uncertain whether *Transamerica* controls the outcome of this case.  Accordingly, we seek guidance from the California Supreme Court regarding the proper construction of the new statute.

## B

Allied and United set forth sharply contrasting interpretations of the MCPPA's cancellation provisions.  We discuss each in turn.  As neither view is supported by clearly controlling California precedent, we ask the California Supreme Court to assist us in resolving the conflict between the two positions.

## 1

According to Allied, the California Supreme Court's decision in *Transamerica*—and the California Court of Appeal's decision in *Fireman's Fund Insurance Co. v. Allstate Insurance Co.*, 234 Cal. App. 3d 1154 (1991), which reached a similar outcome—remain binding precedents under the MCPPA.  Allied contends that such precedents remain controlling despite the above-mentioned modification of the statutory text because they stand for the proposition that, under California law, a motor carrier's insurance policy continues in full force and effect indefinitely, regardless of its stated expiration date, until the insurer follows the prescribed statutory procedure for cancelling the policy.

Allied's position was adopted by the district court here.  The district court acknowledged that both *Transamerica* and

*Fireman's Fund* construed the HCA's cancellation provisions, and that the MCPPA's text differs in ways that might "support[] an inference that the California legislature purposefully departed from the prior [statutory] language." The district court reasoned, however, that even under the MCPPA, a Certificate of Insurance has no clear purpose except to serve as evidence that a commercial driver is covered by an insurance policy that meets the minimum statutory requirements.   Accordingly, the district court concluded that the MCPPA's prohibition on cancellation of a Certificate of Insurance without prior notice to the DMV has only one ascertainable purpose—*viz.*, to prevent a commercial driver's underlying insurance policy from going out of effect without the DMV's knowledge.

On Allied's view, which the district court adopted, United's failure to cancel a Certificate of Insurance on file with the DMV resulted in Porras's policy with United continuing in effect, even though such failure was due to a minor clerical error, and even though the policy had lapsed by its own terms months earlier.  Like the first insurer in *Transamerica*, United would be liable to Allied under a theory of equitable contribution because United's policy had been in effect at the time of Porras's September 1, 2015 collision.

Although Allied's proposed interpretation results in an apparent windfall for Allied based on United's minor clerical error, this interpretation adheres to the policy-based reasoning of *Transamerica* and promotes the DMV's enforcement of the MCPPA's financial responsibility requirements for commercial drivers.  We are uncertain whether the California Supreme Court would adopt Allied's proposed interpretation and follow *Transamerica* under

these circumstances, particularly in light of the distinct statutory text.

2

By contrast, United maintains that *Transamerica* and *Fireman's Fund* are inapplicable to the MCPPA's cancellation provisions. According to United, the MCPPA's text explicitly departs from the HCA by requiring notice to the DMV only when the insurer seeks to cancel a Certificate of Insurance, as distinguished from an insurance policy. United contends that the MCPPA reflects the California legislature's intent to remove third-party notice requirements for cancellation or termination of a commercial auto insurance policy.

On United's view, a commercial driver's insurance policy may be terminated by the insurer without notice to the DMV. Such termination, United argues, would not impair the statute's goal of protecting the public because the Certificate of Insurance itself functions as a "surety" that obligates the insurer to compensate members of the public in case of injury by an uninsured or underinsured driver.

United's position draws support from a substantial body of federal case law interpreting the federal statutory scheme for regulation of interstate commercial trucking. *See, e.g.*, *Carolina Cas. Ins. Co. v. Yeates*, 584 F.3d 868, 881 (10th Cir. 2009) (joining a majority of federal courts of appeals in recognizing federally mandated motor carrier insurance endorsement as a surety obligation). Under the federal rule invoked by United, an insurer's public filing, like a Certificate of Insurance, constitutes a distinct legal obligation to "effectuate a minimum level of recovery for the injured party," separate and apart from the terms of any insurance policy. *Id.* On this theory, the insurer's filing of

the Certificate of Insurance renders it an "insurer of last resort, requiring payment [to an injured third party] only when no other insurance is available." *Id.* at 872.

Thus, if United's view is correct, United would only be liable under the circumstances here had Porras failed to acquire a new insurance policy. Since Porras in fact acquired a new policy from Allied immediately after his United policy expired, there could be no recovery from United based exclusively on a Certificate of Insurance erroneously kept on file with the DMV.

Although United's position gives effect to the modified statutory text and prevents Allied from reaping a windfall, it is unclear if the California Supreme Court would deem the federal rule applicable to California's regulatory scheme. The federal regulatory scheme is similar, but not identical, to California's. And there is no indication in the MCPPA's text, or in any other source of California law, that the Certificate of Insurance has been understood as a surety obligation. Accordingly, we remain uncertain as to how the California Supreme Court would address this issue.

V

A

It appears to this court that there is no clearly controlling precedent of the California Supreme Court or the California Courts of Appeal establishing the meaning of the statutory provisions disputed here. The interpretation selected will have significant public policy implications for California, extending far beyond the two parties to this case. Indeed, resolution of this question of statutory interpretation may impact the scope and operation of California's regulatory scheme protecting California drivers and other members of

the public from the prospect of injury by uninsured or underinsured commercial drivers.

Accordingly, "considerations of comity and federalism," *Mendoza v. Fonseca McElroy Grinding Co.*, 913 F.3d 911, 912 (9th Cir. 2019) (internal citation omitted), prompt us to seek guidance from the California Supreme Court, which remains the primary "expositor[]" of California law, including the MCPPA, *England v. La. State Bd. of Med. Exam'rs*, 375 U.S. 411, 415 (1964). *Cf. Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir. 2007) ("In making the assessment whether to certify, we . . . seek to give meaning and respect to the federal character of our judicial system, recognizing that the judicial policy of a state should be decided when possible by state, not federal, courts."). We therefore request that the California Supreme Court accept and decide the certified question.

B

In light of our decision to certify the question set forth above, submission of this case is withdrawn, and all proceedings in this court are stayed pending the California Supreme Court's decision whether it will accept review and, if so, receipt of the answer to the certified question. The Clerk is directed to administratively close this docket pending further order. The parties shall notify the Clerk of this court within one week after the California Supreme Court accepts or rejects the certified question, and again within one week after the California Supreme Court renders its opinion if accepted. The panel will resume control and jurisdiction upon receipt of an answer to the certified question or upon the California Supreme Court's decision to decline to answer the certified question.

The Clerk of this court shall file an original and ten copies of this order with the clerk of the California Supreme Court, along with copies of all briefs, and shall file a certificate of service on the parties.  Upon request of the California Supreme Court, and as the California Supreme Court deems necessary, the Clerk of this court shall also transmit the original or copies of portions of the record.

**IT IS SO ORDERED.**